Commonwealth of Pennsylvania, Department of Environmental Resources, Petitioner *v.* Bethlehem Township Municipal Authority, Respondent.

Argued November 18, 1982, before Judges ROGERS, MACPHAIL and DOYLE, sitting as a panel of three.

*Maxine Woelfling,* Assistant Counsel, for petitioner.

*Daniel L. Sullivan,* with him *Charles B. Zwally, Shearer, Mette & Woodside,* for respondent.

OPINION BY JUDGE DOYLE, October 5, 1983:

Before this Court is an appeal by the Department of Environmental Resources (DER) from a decision and order of the Environmental Hearing Board (EHB) sustaining an appeal by the Bethlehem Town-

ship Municipal Authority (Authority) from a refusal by the DER to certify an amendment to the Authority's sewage construction grant to the federal Environmental Protection Agency (EPA).

The facts in this case are undisputed. The Authority, seeking a federal construction grant to aid in the development of a sewer system pursuant to the federal Clean Water Act, 33 U.S.C. §§1251-1376 (1978), submitted a development plan to the DER for certification. Certification by the DER of said plans is a prerequisite to their submission to the EPA for funding. The DER certified the plan on June 21, 1977. The EPA, however, as the final approving authority, objected to a portion of the proposed sewer system including an aspect designed to serve a development in the Township known as Oakland Hills I. The basis for the objection was a lack of a demonstrable need for sewers at that time. As a result of the objection, the Authority eliminated, inter alia, the Oakland Hills I portion of the plan from its grant application and the EPA approved funding. In conjunction with this approval, the EPA informed the Authority by letter dated October 18, 1977, that the deleted aspects of the project *could be reinstated upon a demonstration of a sufficient need for sewers in the area in question.*[1]

---

[1] The letter read, in pertinent part:

The purpose of this letter is to inform you that the Monocacy Creek Interceptor and related adjoining sewers which were deleted from this project could possibly be reinstated into the eligible project. However, two criteria must be met before consideration can be given:

1. Demonstrate sufficient need for sewers in the Monocacy Creek drainage basin.

2. Indicate progress in the implementation of the Lower Nazareth Township Facility Plan.

Due to an increasing number of malfunctions in the on-lot sewer systems in Oakland Hills I, some of which are irreparable, the Authority sought to amend its construction grant on April 15, 1980, so as to reinstate the Oakland Hills I aspect of the project. The DER, however, refused to certify the amendment to the EPA on the grounds that it constituted a "change in scope" in the project and therefore was subject to 25 Pa. Code §103.14(b)(2), the criteria of which the authority failed to meet.[2] The Authority appealed to the EHB which sustained the appeal on the grounds that the amendment application in the instant case did not constitute a "change in scope." Accordingly, the DER was ordered to certify the amendment to the EPA. The appeal to this Court followed in which the DER contends that application of 25 Pa. Code §103.14 (b)(2) was proper in this case and should operate to require rejection of the amendment application.

This Court's scope of review in cases such as that before us is limited to a determination of whether there has been a violation of constitutional rights, an error of law, or a lack of substantial evidence to support a necessary finding of fact. *Department of Environmental Resources v. Bierman*, 23 Pa. Commonwealth Ct. 646, 354 A.2d 48 (1976).

The EHB reasoned as follows in ordering the DER to certify the Oakland Hills I amendment to the EPA:

---

[2] 25 Pa. Code §103.14(b)(2) reads:

(b) Grant funding for changes in the scope of a grant project will be approved by the Department:

(2) in the case of a Step 3 grant project:

(i) where the change in scope is necessary to protect the structural or process integrity of the facilities; or

(ii) where adverse conditions are identified during the construction of the facilities which could not have been foreseen by the design engineer prior to encountering the condition.

[W]e do not agree that DER should have applied Section 103.14 against the authority *in the present matter.* Section 103.14, by its terms, applies only where there has been a change in the scope of a grant project. DER has directed us to no definition of the phrase "change in the scope" but, apparently, relies upon the grant issued by EPA on September 30, 1977 as defining the scope of the grant project. There are several problems with this analysis. In the first place, the authority's original application included the Monocacy interceptor and Oakland Hills I sewer within the project scope and there is no evidence in the record to indicate that this application was changed by the authority. Instead it appears that all that the authority did in response to EPA pressure was to reduce its request for the amount of money to finance the project. The EPA letter of October 18, 1977 indicates that even after its grant award to the authority, EPA still considered the Monocacy interceptor and Oakland Hills I sewer to be a part of the grant project (albeit an unfunded part). As the administering agency, EPA's analysis should be given due consideration.

Secondly, DER by its certification of June 21, 1977, included the Monocacy interceptor and Oakland Hills I sewers within the grant project. This record is devoid of any indication that DER ever withdrew or modified its certification of the full project. It follows, therefore, that the scope of the authority's project as acknowledged by EPA and certified by DER included the Oakland Hills I sewers within its ambit. Thus, the authority's grant

> amendment request of April 15, 1980 which was directed to the Oakland Hills I sewers did not change the scope of the project. Therefore, this requested amendment is not covered by Section 103.14 of DER's regulations. (Emphasis in original.)

We fully recognize that the DER is more than a mere intermediary or clearing house for grant applications to the EPA. There exists only a finite level of federal funds for water pollution control projects in any given year. The DER must establish priorities and allocate these funds in a manner which will best serve the interests of the Commonwealth as a whole. *See* Sections 204, 205 and 303 of the Clean Water Act, 33 U.S.C. §§1284, 1285 and 1313 (1978); 40 C.F.R. §35.915. In the case at bar, however, the EPA by virtue of its letter of October 18, 1977, has clearly obviated any authority the DER may otherwise have by law and/or regulation to review the proposal for the Oakland Hills I work by any standard other than those criteria enunciated in the letter. Whether Oakland Hills I can be technically classified as an amendment to the approved project, or a change in scope, or whatever, is irrelevant to our analysis. The proposal to construct those sewers at this time is the by-product of the EPA's authority of final approval over these matters.[3] The EPA was acting within its authority and the DER, having had its mandatory bite at the apple prior to submission of the 1977 proposal to the EPA, must now be considered to be bound by the conditions for reinstatement of the project.

Accordingly, we affirm the decision of the EHB regarding the certification of the Oakland Hills I project to the EPA. The latter agency may review

---

[3] *See* 40 C.F.R. §35.903(d).

the request pursuant to the criteria it established for that project's reinstatement in 1977.

ORDER

Now, October 5, 1983, the decision and order of the Environmental Hearing Board in the above captioned matter, Docket No. 80-155-H, dated June 25, 1981, is hereby affirmed.

Judge MacPhail concurs in the result only.